UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23011-DAMIAN

ALEJANDRO BORGES, *individually,*
*and on behalf of all others similarly situated*,

    Plaintiff,

vs.

SMILEDIRECTCLUB, LLC,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S**
**MOTION TO DISMISS CLASS ACTION COMPLAINT [ECF NO. 4]**

THIS CAUSE is before the Court on Defendant, SmileDirectClub, LLC's ("Defendant"), Motion to Dismiss Class Action Complaint, filed August 19, 2021, (the "Motion to Dismiss"). [ECF No. 4].[1]

THE COURT has carefully considered the Motion to Dismiss, the parties' memoranda [ECF Nos. 18, 21, 41, and 43], the notices of supplemental authority and responses thereto [ECF Nos. 44–48, 53, 55–56, 67, and 69–71], the supplemental briefing ordered by the Court [ECF Nos. 65 and 66], the pertinent portions of the record, and relevant legal authorities. The Court also heard from the parties, through counsel, at hearings held January 18, 2022, and March 21, 2022, and is otherwise fully advised in the premises. For the reasons set forth below, the Motion to Dismiss [ECF No. 4] is denied.

---

[1] This matter is referred to the undersigned pursuant to the Parties' Consent to Proceed Before United States Magistrate Judge, [ECF No. 58], and Order Referring Case to Magistrate Judge. *See* ECF No. 59.

I. **BACKGROUND**

Plaintiff, Alejandro Borges ("Plaintiff"), brought this class action pursuant to the Florida Telephone Solicitation Act ("FTSA"), Section 501.059, *et seq.*, Florida Statutes (2021), as amended by Senate Bill No. 1120, a subsection of Florida's Consumer Protection laws. *See* ECF No. 1-3 ("Complaint") at ¶ 1. Plaintiff alleges Defendant is an international orthodontic device company that specializes in teeth alignment products and offers its products to consumers online. *Id.* at ¶ 2. To promote its products and services, Defendant engages in telephonic sales calls to consumers without securing their prior express written consent as required by the FTSA. *Id.* at ¶ 3.

According to the allegations in the Complaint, on or about July 13, 2021, and July 19, 2021, Defendant sent two unsolicited text messages[2] promoting orthodontic consumer goods or services to Plaintiff's cellular telephone number. *Id.* at ¶¶ 11–12. Defendant allegedly sent similar unsolicited text messages to other individuals residing in Florida who did not consent to receive text messages from Defendant. *Id.* at ¶¶ 13, 32. Plaintiff alleges that in sending these unsolicited, unconsented to texts, Defendant used "a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers." *Id.* at ¶¶ 15, 34. Plaintiff also alleges that neither he nor the Class members gave Defendant prior express written consent to send the text messages promoting Defendant's business in such manner. *Id.* at ¶¶ 16, 32. According to Plaintiff, Defendant's actions allegedly caused Plaintiff and the Class members harm, including violations of their statutory rights, annoyance, nuisance, and invasion of their privacy. *Id.* at ¶ 4.

---

[2] Section 501.059(1)(j) defines telephonic sales calls to include text messages.

Based on these allegations, on July 20, 2021, Plaintiff filed a one-count Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging Defendant "made and/or knowingly allowed telephonic sales calls to be made utilizing an automated system for the selection or dialing of telephone numbers" without obtaining Plaintiff's and the Class members' prior express written consent in violation of the FTSA. *Id.* at ¶¶ 33–34. Pursuant to Section 501.059(10)(a) of the FTSA, Plaintiff, on behalf of the Class members and himself, seeks statutory damages and an injunction enjoining Defendant from making further telephonic sales calls without obtaining the called party's prior express written consent. *Id.* at ¶¶ 5, 35.

On August 18, 2021, Defendant removed the action to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). [ECF No. 1]. The following day, on August 19, 2021, Defendant filed the Motion to Dismiss now before this Court challenging the FTSA as unconstitutional. [ECF No. 4]. On October 25, 2021, pursuant to 28 U.S.C. § 2403(b) and Federal Rule of Civil Procedure 5.1(b), this Court certified to the Attorney General of the State of Florida that the constitutionality of Section 501.59(8)(a) of the FTSA had been challenged, and the Attorney General declined to respond within the sixty-day period required by the certification. [ECF No. 39].

In the Motion to Dismiss, Defendant argues that the FTSA is unconstitutional for two reasons: (1) it violates the First Amendment to the United States Constitution (and Florida's free speech guarantee) as an unconstitutional content-based restriction on speech (*i.e.*, the statute singles out telephonic sales calls); and (2) it violates the Due Process Clause of the Fourteenth Amendment (and Florida's due process guarantee) because it fails to define what constitutes an "automated system for the selection or dialing of telephone numbers," thereby

making it unconstitutionally vague regarding the type of equipment or system that is prohibited under the statute. Motion to Dismiss at 3–4.[3]

## II. APPLICABLE LEGAL STANDARDS

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must present "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 12(b)(6) does not permit dismissal of a well-pled complaint simply because "actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

When ruling on a motion under Rule 12(b)(6), a court must "view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). Still, the court need not take allegations as true if they are merely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Additionally, "a district court weighing a

---

[3] The pagination of the Motion cited herein corresponds to that shown on the top right-hand corner created by the Court's CM/ECF filing system.

4

motion to dismiss asks not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Twombly*, 550 U.S. at 563 n.8 (citation and internal quotations omitted). "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley*, 355 U.S. at 45–46).

### III. DISCUSSION

Although Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(6), Defendant neither contests the sufficiency of the factual allegations nor the plausibility of the claims as alleged in the Complaint. Rather, in the Motion to Dismiss, Defendant asserts constitutional challenges to Section 8(a) of the FTSA and argues that it runs afoul of the First Amendment, as an unconstitutional content-based restriction on speech, and the Due Process Clause of the Fourteenth Amendment, as unconstitutionally vague. Motion to Dismiss at 3–4.

### A. *The FTSA*

As noted in the Motion to Dismiss, the FTSA attracted little attention since its enactment in 1987 until the Florida legislature added a private right of action in 2021. *Id.* at 5. For many of the same reasons that Congress enacted the federal Telephone Consumer Protection Act ("TCPA") in 1991, the Florida legislature introduced CS/SB 1120 to address several concerns raised by consumers regarding unsolicited, automated telephone calls. *See Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020) (noting the TCPA "responded to a torrent of vociferous consumer complaints about intrusive robocalls"); *see also* The Florida Senate, Bill Analysis And Fiscal Impact Statement, S.B. 1120, at 2 (Apr. 19,

5

2021) ("Consumers are often inundated with unwanted calls. In fiscal year 2020, the Federal Trade Commission . . . received 293,071 complaints from Florida consumers about unwanted telephone calls."). The Florida bill updated Section 501.059 of the FTSA by creating a new private right of action for consumers which went into effect on July 1, 2021. Fla. Stat. § 501.059(10)(a).

Consequently, the FTSA now requires all solicitors making sales telephone calls, text messages, and voicemail transmissions with an automated system that is capable of either selecting or dialing the recipient's telephone number to have the recipient's prior express written consent. *Id.* at § 501.059(8)(a). Specifically, Section 8(a) of the FTSA provides:

> A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

*Id.* at § 501.059(8)(a).[4]

---

[4] The terms "telephonic sales call" and "prior express written consent" are defined under the statute as follows:
> "Telephonic sales call" means a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes.

Fla. Stat. § 501.059(1)(j).

\*   \*   \*

> "Prior express written consent" means an agreement in writing that:
> 1. Bears the signature of the called party;
> 2. Clearly authorizes the person making or allowing the placement of a telephonic sales call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

Aggrieved parties can bring an action to enjoin violations of Section 8(a) and recover actual damages or $500 per violation, whichever is greater. *Id.* at § 501.059(10)(a). Additionally, a court may triple these damages if the underlying violation is willful or knowing. *Id.* at § 501.059(10)(b).

With the foregoing statutory framework in mind, the Court first considers whether Plaintiff has alleged sufficient facts to state a claim for relief under the FTSA. *Twombly*, 550 U.S. at 555.

**B.** *Plaintiff Has Stated A Claim Under The FTSA.*

To assert an FTSA claim, a plaintiff must allege a person made or knowingly allowed "a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers . . . without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a) (hereinafter, "Section 8(a) of the FTSA" or the "Autodialer Provision"). At the motion to dismiss stage, the Court's task is to determine 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at 563 n.8.

---

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and
4. Includes a clear and conspicuous disclosure informing the called party that:
    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and
    b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

*Id.* at § 501.059(1)(g).

As noted above, although Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(6), Defendant does not contest the sufficiency of the factual allegations or the plausibility of the claims in Plaintiff's Complaint. *See generally* Motion to Dismiss. And, taking the well-pled allegations in the Complaint as true, the Court finds that Plaintiff has sufficiently alleged Defendant violated the autodialer provision of the FTSA by using an "automated system" to send the unsolicited and unconsented to text messages at issue. *See* Complaint at ¶¶ 29–34. Defendant instead avers that Section 8(a) of the FTSA violates the First and Fourteenth Amendments to the United States Constitution, as well as the free speech and due process guarantees under the Florida Constitution. *See* Motion to Dismiss at 3–4. Thus, the Court turns to Defendant's constitutional challenges.

### C. *The FTSA Does Not Violate The First Amendment.*

Defendant first argues that Section 8(a) of the FTSA violates the First Amendment. Specifically, Defendant asserts the statute imposes a content-based restriction, as it subjects only "telephonic sales calls" to the FTSA's regulations. *Id.* at 6–8. Defendant further argues that because it is a content-based restriction on speech, the FTSA is subject to the very high standard of strict scrutiny. *Id.* at 9–10. Strict scrutiny requires a law to be "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

Plaintiff responds that since the FTSA only restricts commercial speech, it is subject to the less stringent standard of intermediate scrutiny. Response at 3–7. To satisfy the intermediate scrutiny standard, a statute or regulation must be "narrowly drawn" to "directly and materially advance" a "substantial [government] interest." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 624 (1995) (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564–65 (1980)).

8

### 1. The FTSA Is Subject To Intermediate Scrutiny.

Generally, "[a] content-neutral regulation of expressive conduct is subject to intermediate scrutiny, while a regulation based on the content of the expression must withstand the additional rigors of strict scrutiny." *NetChoice, LLC v. Att'y Gen., State of Fla.*, 34 F.4th 1196, 1223 (11th Cir. 2022) (citing *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1291 (11th Cir. 2021)). However, the general rule that content-based restrictions on speech trigger strict scrutiny is not absolute. *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1246 (11th Cir. 2015). "Content-based restrictions on certain categories of speech such as commercial and professional speech, though still protected under the First Amendment, are given more leeway because of the robustness of the speech and the greater need for regulatory flexibility in those areas." *Id.* With respect to these categories of speech, a court's inquiry is "the more flexible, yet still searching, standard of intermediate scrutiny." *Id.* (citing *Central Hudson*, 447 U.S. at 564). Under intermediate scrutiny, "'restrictions directed at commerce or conduct' may be upheld—assuming they further a substantial government interest and are narrowly tailored—even if they 'impos[e] incidental burdens on speech.'" *Id.* (quoting *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 563–64 (2011)).

Commercial speech is defined as an "expression related solely to the economic interests of the speaker and its audience." *Central Hudson*, 447 U.S. at 561. The "core notion" of commercial speech extends to speech that proposes a commercial transaction. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65–66 (1983). The law is clear that commercial speech is afforded lesser protections than those traditionally given to noncommercial speech. *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017). The party

9

seeking to uphold a restriction on commercial speech carries the burden of justifying it. *Bolger*, 463 U.S. at 71 n.20 (citing *Central Hudson*, 447 U.S. at 570).

Here, although the parties agree the FTSA restricts commercial speech, they disagree on what level of scrutiny—intermediate v. strict—applies. *See* Motion to Dismiss at 7–10; Response at 2–7. Defendant argues that Section 8(a) of the FTSA is subject to strict scrutiny because it singles out a specific type of commercial speech—telephonic sales calls—and subjects only these calls to the FTSA's regulations, while all other types of calls (*e.g.*, informational and debt collection calls) are not restricted by the FTSA's autodialer provision. Motion to Dismiss at 6–8. But, as the Eleventh Circuit recently specified in analyzing a different Florida statute[5] in the First Amendment context, the fact that a statutory provision targets only a specific subset or type of speech (here, solicitation calls) "isn't enough to subject the entire law to strict scrutiny or *per se* invalidation." *NetChoice*, 34 F.4th at 1225. Rather, the appellate court explained, although "the First Amendment mandates strict scrutiny for any speech regulation that applies to one medium (or a subset thereof) but not others: 'Heightened scrutiny is unwarranted when the differential treatment is justified by some special characteristic of the particular medium being regulated.'" *Id.* (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 660–61 (1994)). As applied in the instant case, the *NetChoice* decision instructs that although the FTSA's autodialer provision applies only to telephonic sales calls, it is not necessary to subject the law to strict scrutiny because Section 8(a) of the FTSA regulates only commercial speech.

---

[5] In *NetChoice*, the Eleventh Circuit analyzed the constitutionality of S.B. 7072—a new Florida law aimed at restricting large social media platforms' ability to engage in content moderation decisions. 34 F.4th at 1205.

The Eleventh Circuit has not addressed the FTSA within the context of a First Amendment challenge, and there are scant decisions from federal district courts that have done so. However, at least one court in this District has analyzed similar constitutional challenges to the statute. *See Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, No. 21-cv-6149, 2022 WL 2919260 (S.D. Fla. May 18, 2022) (Ruiz, J.). In *Turizo*, the plaintiff brought a similar class action under the FTSA alleging the defendant had violated the FTSA's autodialer provision by using an "automated system" to transmit unsolicited text messages advertising Subway restaurant deals. *Id.* at *1–2. Like Defendant here, the defendant in *Turizo* asserted constitutional challenges to the FTSA. *Id.* at *2. The District Court held that the statute is subject to intermediate scrutiny because it regulates commercial speech, and the court found that the FTSA's autodialer provision "does not represent an unconstitutional restriction on . . . commercial speech" and that the statute "is narrowly drawn to advance a substantial government interest." *Id.* at *9–11. In *Pariseau v. Built USA, LLC*, a court in the Middle District of Florida likewise held that Section 8(a) of the FTSA is subject to intermediate scrutiny on the same grounds. No. 21-cv-2902, 2022 WL 3139243 (M.D. Fla. Aug. 5, 2022) (Merryday, J.).

In *Turizo*, the parties disagreed on whether the Supreme Court's decisions in *Reed* and *Barr* altered the traditional application of intermediate scrutiny for analyzing regulations on commercial speech. The parties in the instant case have the same disagreement. *See* Motion to Dismiss at 7–10; Response at 5–7; Reply at 3.

In *Reed*, the Supreme Court found that a municipality's sign code constituted a content-based speech restriction because it treated categories of signs differently based on the type of information conveyed. 576 U.S. at 163–65. The *Reed* Court held the municipality's

11

sign code failed strict scrutiny. *Id.* at 171–73. In so ruling, the Supreme Court explained that "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* (citing *Sorrell*, 564 U.S. at 563–64). Similarly, in *Barr*, the Supreme Court invalidated the government-debt exception to the TCPA's regulations because it "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." 140 S. Ct. at 2343. The *Barr* Court found the government-debt exception unconstitutional because it could not withstand strict scrutiny and severed it from the remainder of the statute. *Id.* at 2347, 2355.

Defendant argues that the Supreme Court's decisions in *Reed* and *Barr* compel the application of strict scrutiny here. Motion to Dismiss at 6–10. However, as Judge Ruiz found in *Turizo*, the Supreme Court did not explicitly address the issue of content-based restrictions on commercial speech in either *Reed* or *Barr*. *Turizo*, 2022 WL 2919260, at *10; *see also Pariseau*, 2022 WL 3139243, at *4–5. Indeed, the plurality decision in *Barr* specifically cautioned: "Our decision is not intended to expand existing First Amendment doctrine or to otherwise affect traditional or ordinary economic regulation of commercial activity." 140 S. Ct. at 2347. This Court agrees that the *Reed* and *Barr* decisions did not alter the existing rule that restrictions on commercial speech are subject to intermediate scrutiny.

This Court observes that Eleventh Circuit precedent consistently applies intermediate scrutiny when analyzing regulations on commercial speech, even where the appellate court determined that "the regulations at issue were speaker focused and content based." *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1235 n.7 (11th Cir. 2017); *see also Dana's R.R. Supply*, 807 F.3d at 1246 ("Content-based restrictions on certain categories of speech such as commercial and professional speech, though still protected under the First Amendment, are

12

given more leeway because of the robustness of the speech and the greater need for regulatory flexibility in those areas." (citing *Central Hudson*, 447 U.S. at 564)); *accord Woods v. Santander Consumer USA Inc.*, No. 14-cv-02104, 2017 WL 1178003, at *2 (N.D. Ala. Mar. 30, 2017) ("Even where commercial speech is content-based, courts apply intermediate scrutiny.").

Based on the foregoing, this Court finds that Section 8(a) of the FTSA is subject to intermediate scrutiny because it restricts commercial speech, despite the statute's imposition of content-based regulations on such commercial speech.

### 2. Section 8(a) Of The FTSA Survives Intermediate Scrutiny.

A restriction on commercial speech survives First Amendment intermediate scrutiny if (1) the speech is not misleading and does not concern unlawful activity, (2) the regulation serves a substantial government interest, (3) the regulation directly advances the asserted government interest, and (4) the regulation is not more extensive than is necessary to serve that interest. *FF Cosmetics*, 866 F.3d at 1298 (quoting *Central Hudson*, 447 U.S. at 566).

The parties do not dispute that the commercial speech at issue (telephonic sales calls) is neither misleading nor related to unlawful activity. The next consideration, then, is whether Section 8(a) of the FTSA serves a substantial government interest. *Central Hudson*, 447 U.S. at 563–64 ("The State must assert a substantial interest to be achieved by restrictions on commercial speech."). Plaintiff, who carries the burden of justifying the restriction on Defendant's commercial speech, asserts that "residential privacy and tranquility" are "significant governmental interests." Response at 8. Pointing to the legislative history of the FTSA, Plaintiff emphasizes that the Florida legislature amended the FTSA to "combat unwanted prerecorded and autodialed calls that had resulted in 293,071 complaints from Florida consumers in 2020 alone." *Id.*

This Court agrees that consumer privacy protection is a well-recognized substantial government interest. *See Turizo*, 2022 WL 2919260, at *10 (citing *Barr*, 140 S. Ct. at 2348 (recognizing "the credibility of Congress's continuing interest in protecting consumer privacy"); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1253–54 (S.D. Fla. 2019) (concluding consumer privacy protection is a "compelling government interest"); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380 (N.D. Ga. 2013) ("[T]he government has a significant interest in protecting users of cellular telephones from invasions of privacy, nuisance, and uninvited costs.")).

The next consideration is whether the challenged regulatory technique under the FTSA directly advances the asserted government interest. Plaintiff argues that the Florida legislature amended the FTSA to reduce unwanted sales calls to consumers in response to consumer complaints. Response at 8–9; Surreply at 2. This Court agrees that Section 8(a) of the FTSA advances the public interest in protecting consumer privacy by limiting the use of autodialing equipment which has the ability to greatly increase the number of unwanted calls, including automated calls or "robocalls." *See Turizo*, 2022 WL 2919260, at *10 ("[W]ith the knowledge that autodialers greatly increase the speed and efficiency with which solicitors can connect to called parties, the Florida Legislature implemented limitations on the permissible use of autodialing equipment.").

Lastly, the Court considers whether Section 8(a) of the FTSA is "narrowly drawn" to be a valid restriction on commercial speech under the First Amendment. *Went For It*, 515 U.S. at 624. Notably, "the 'least restrictive means' test has no role in the commercial speech context." *Id.* at 632. Rather, a court must determine whether there is a "fit" between the government's interests and the means chosen to advance those interests:

> a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective. Within those bounds we leave it to governmental decisionmakers to judge what manner of regulation may best be employed.

*FF Cosmetics*, 866 F.3d at 1299 (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). As the *Turizo* Court noted, Section 8(a) of the FTSA "is narrowly drawn because while limiting the use of autodialers, it does not outright prohibit them. Nor does the autodialer provision prohibit [all] unsolicited telephone calls." 2022 WL 2919260, at *11. Indeed, the FTSA leaves open alternative channels for communication such as "unsolicited live calls, consented-to autodialed calls, and unsolicited mail and email advertisements." *Id.* This Court agrees that Section 8(a) of the FTSA does not outright prohibit all unsolicited sales calls nor the use of autodialers but is instead narrowly drawn to advance a substantial government interest. Therefore, the Court finds the statute's restriction on commercial speech is narrowly tailored to advance the significant government interest in reducing unwanted sales calls and, as such, survives intermediate scrutiny.

Defendant asserts that the FTSA's "prior express written consent" requirement is still more extensive than necessary and that the State failed to consider less restrictive alternatives (*i.e.*, do-not-call lists or opt-out requirements). *See* Reply at 7–8; ECF No. 66, at 3. However, although the regulation may not be the least restrictive means for advancing the State's interests, as noted above, "the 'least restrictive means' test has no role in the commercial speech context." *Went For It*, 515 U.S. at 632. The Eleventh Circuit has upheld "prohibitions on commercial speech despite the availability of potentially less-restrictive alternatives." *FF Cosmetics*, 866 F.3d at 1300 (citing cases). Here, because Section 8(a) is narrowly drawn to

15

advance the State's interests, even if some alternative or less restrictive means for advancing those interests may be available, the statute nevertheless survives intermediate scrutiny.

Accordingly, the Court finds Section 8(a) of the FTSA does not violate the First Amendment.

    **D.** *Section (8)(a) Of The FTSA Is Not Unconstitutionally Vague.*

Defendant next challenges Section 8(a) of the FTSA as unconstitutionally vague and contends the statute's failure to define the term "automated system for the selection or dialing of telephone numbers" is an "unsurmountable due process problem." Motion to Dismiss at 16–17. According to Defendant, the use of such vague language to describe the equipment prohibited by the regulation is unconstitutional and unduly chills protected speech. *Id.* at 18. Defendant further asserts that the FTSA's broad use of the term "automated system for the selection or dialing of telephone numbers" opens the door to arbitrary and discriminatory application of the law in violation of the Due Process Clause. *Id.* at 22.

To assert a successful facial challenge based on vagueness, Defendant "must establish that no set of circumstances exist under which the [statute or regulation] would be valid." *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1329 (11th Cir. 2001) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "The fact that a [statute or regulation] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.* As the Eleventh Circuit observed, this heavy burden makes such an attack "the most difficult to mount successfully." *Id.* Importantly, when presented with a facial challenge, the court must "examine the complainant's conduct before analyzing other hypothetical applications of the law." *Vill. of Hoffman Estates v. Flipside, Hoffman Estate, Inc.*, 455 U.S. 489, 495 (1982). As Plaintiff argues, where a statute or regulation clearly covers

some conduct in which a party engages, that party cannot complain of the vagueness of the law. *Ala. Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1139–40 (11th Cir. 2014).

Section 8(a) of the FTSA prohibits telephonic sales calls involving "an automated system for the selection or dialing of telephone numbers . . . without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a). In the Complaint, Plaintiff alleges that Defendant "utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers" without obtaining their prior express written consent. *See* Complaint at ¶¶ 15, 32–34. Based on these allegations, which the Court must accept as true, Defendant's conduct clearly falls within the scope of the FTSA's autodialer provision. Fla. Stat. § 501.059(8)(a) ("A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers . . . without the prior express written consent of the called party."). Because Defendant's conduct alleged in the Complaint falls directly within the statute, Defendant's facial attack on Section(8)(a) of the FTSA on vagueness grounds is unpersuasive. *See Turizo*, 2022 WL 2919260, at *11–12.

Defendant also contends there is no objective standard to determine what type of technology (*i.e.*, "an automated system") falls within the FTSA. Reply at 9–11. But the lack of a definition for the term "automated system" is not grounds to invalidate the entire statute. It is indisputable that "a statute is not ambiguous merely because it contains a term without a statutory definition." *United States v. Sepulveda*, 115 F.3d 882, 886 n.9 (11th Cir. 1997); *accord State v. Brake*, 796 So. 2d 522, 528 (Fla. 2001) ("[T]he legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague.").

17

The Court finds that the absence of a definition of "automated system" in Section 8(a) of the FTSA does not render that provision unconstitutionally vague when, as here, Defendant's alleged conduct is clearly encompassed by the statute. Accordingly, Section 8(a) of the FTSA is not unconstitutionally vague, and Defendant's challenge on vagueness grounds also fails.

## IV.   CONCLUSION

In short, Section 8(a) of the FTSA is not unconstitutional. The statute survives intermediate scrutiny as a content-based restriction on commercial speech, and it is not unconstitutionally vague for want of a definition of the term "automated system." Because Plaintiff has stated a valid claim for relief under the FTSA, Plaintiff is entitled to offer evidence to support his claims and those of the purported Class members. *Twombly*, 550 U.S. at 563.

Accordingly, for the reasons stated above, it is hereby

ORDERED and ADJUDGED that Defendant, SmileDirectClub, LLC's, Motion to Dismiss Class Action Complaint [ECF No. 4] is **DENIED**. It is further

ORDERED and ADJUDGED that the STAY previously in place in this matter is **LIFTED**. It is further

ORDERED and ADJUDGED that Defendant shall file its Answer and Affirmative Defenses to Plaintiff's Class Action Complaint on or before **September 30, 2022**.

**DONE and ORDERED** in Chambers at Miami, Florida this 15th day of September 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record